United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2006

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*for the Fifth Circuit*

No. 04-41594

RAYMOND W. BEALL; HAZEL A. BEALL,

Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

Defendant – Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
No. 6:00-CV-187

Before GARWOOD, PRADO and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Taxpayers are seeking abatement of interest pursuant to 26 U.S.C. § 6404(e), asserting that delays and errors by the Internal Revenue Service constituted ministerial acts within the meaning of section 6404(e) and resulted in the impairment of the taxpayers' ability to defend against adjustments to partnership items that caused additional tax liability, penalty and interest for the individual taxpayers. The district court granted the United States' Rule 12(b)(6)[1] motion to dismiss for failure to state a claim. Because none of the errors or delays

---

[1] FED. R. CIV. P. 12(b)(6).

of which the taxpayers complain were ministerial acts, we affirm the district court's judgment.

## I

The taxpayers, Raymond W. Beall and his wife, seek abatement of interest for four years, from March 1989 through April 1993. Their claims are governed by 26 U.S.C. § 6404(e) before its amendment in 1996. Section 6404(e) provided:

> (e)     ASSESSMENTS OF INTEREST ATTRIBUTABLE TO ERRORS AND DELAYS BY INTERNAL REVENUE SERVICE.—
>> (1)     IN GENERAL.—In the case of any assessment of interest on—
>>> (A)     any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>>> (B)     any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.
>> (2)     INTEREST ABATED WITH RESPECT TO ERRONEOUS REFUND CHECK.—The Secretary shall abate the assessment of all interest on any erroneous refund under section 6602 until the date demand for repayment is made, unless—
>>> (A)     the taxpayer (or a related party) has in any way caused such erroneous refund, or
>>> (B)     such erroneous refund exceeds $50,000.[2]

Beall and his wife were limited partners in Agri-Venture Associates and in Oasis Date

---

[2]26 U.S.C. § 6404(e)(1988) (amended 1996).

Associates. The Bealls filed a joint federal income tax return for 1984, which reported losses from these partnerships. The Bealls also filed an Application for Tentative Refund, which carried back these losses from 1984 to 1981. The requested refund was made, but the IRS subsequently selected the partnerships' 1984 returns for administrative review as part of a larger IRS investigation, which examined the 1984, 1985, and 1986 tax returns of partnerships that shared a common general partner, AMCOR Capital Corp.

In March 1989, in connection with a grand jury investigation, the IRS entered the general partner's office and seized the partnerships' books and records. The grand jury proceedings remained ongoing for four years and were concluded without any indictments or charges being brought or filed. During this time, the United States suspended the civil examination and adjustment process. The IRS did not return the partnerships' books and records until 1993, and when the IRS did return them, some had been lost and the remainder were in disarray. The Bealls' claim for abatement of interest arises out of these events, and they seek suspension of interest from the date when the referral to the criminal investigation division was made until the books and records were returned in April 1993. Alternatively, they seek abatement from March 1989 until April 1993. The Bealls assert that the IRS erred or delayed in performing ministerial acts during this time by: (i) delaying issuance of a criminal referral, (ii) delaying or suspending civil proceedings, (iii) conducting an erroneous and unreasonable criminal investigation, (iv) improperly seizing the partnerships' books and records based on a flawed search warrant, (v) losing some of the partnerships' books and records, (vi) returning the partnerships' books and records in disarray, and (vii) impairing

3

access to the partnerships' books and records for four years.

In December 1996 the IRS sent proposals to the Bealls for resolving issues relating to the partnerships. Several months thereafter, the Bealls and the IRS agreed to a settlement relating to the partnerships. In June 1997 the IRS advised the Bealls in writing of adjustments to their individual tax liability for 1981 and 1984 resulting from the settlements. The IRS assessed additional taxes of $29,978 and a penalty and interest in the amount of $67,525, which the Bealls paid.

In December 1997 the Bealls requested a refund of the additional taxes, penalty and interest they paid as a result of the settlement. The IRS denied the request. In April 1999 the Bealls filed a supplemental claim for refund, claiming in part that interest should be abated under 26 U.S.C. § 6404(e).

In March of 2000 the Bealls filed suit in district court regarding their December 1997 and April 1999 refund requests. The claim regarding the December 1997 request was dismissed as barred by the statute of limitations, and the Bealls did not appeal that decision. The claim regarding the April 1999 request asserted that interest should be abated under 26 U.S.C. § 6404(e).[3]

The district court granted a motion to dismiss filed by the United States, holding that the court lacked jurisdiction to hear challenges to a denial of a request for abatement under

---

[3]The April 1999 refund request also included a claim that a net interest rate of zero should have applied under 26 U.S.C. § 6621(d). However, that claim was dismissed by the district court, and the Bealls never appealed dismissal of that claim.

26 U.S.C. § 6404(e). This court reversed, holding that the district court had jurisdiction over the matter, and remanded the case for further proceedings.[4]

On remand, the United States renewed its motion to dismiss or for summary judgment, arguing that (1) all of the complained-of acts occurred before the IRS "contacted" the Bealls "in writing" regarding a "deficiency" and therefore did not come within section 6404(e), and (2) the IRS's delays and errors were not "ministerial" and therefore could not provide a basis for abatement. The district court held that some of the complained-of acts occurred before the IRS contacted the Bealls and that the remaining acts were not "ministerial" and could not provide a basis for abatement.[5] Accordingly, the district court dismissed the Bealls' claim, and the Bealls have pursued this appeal.[6] Because we conclude that none of the delays or errors of which the Bealls complain were ministerial acts, we do not reach the question of how 26 U.S.C. § 6404(e) should be construed with regard to when the IRS "contacted the taxpayer in writing with respect to such deficiency or payment."

## II

Whether and when to issue a criminal referral is not a ministerial act. It requires the exercise of some discretion as does conducting a criminal investigation and deciding how long books and records are needed in conducting such an investigation. Similarly, whether to suspend civil proceedings pending a criminal investigation requires the exercise of

[4]*Beall v. United States*, 336 F.3d 419, 431 (5th Cir. 2003).

[5]*Beall v. United States*, 335 F. Supp. 2d 743, 751, 753 (E.D. Tex. 2004).

[6]*Id.* at 754.

discretion. In addition, the allegation that a flawed search warrant was used to seize the

partnerships' books and records does not involve a ministerial act by the IRS. Absent

exigent circumstances, a magistrate must issue a warrant,[7] and any flaw caused by the

magistrate was not attributable to the IRS. To the extent that the IRS may have provided

information to a magistrate to obtain the warrant, and that information caused the warrant

to be "flawed," the provision of such information was not ministerial.

Whether the loss of the partnerships' books and records involved a "ministerial act"

is a closer question. In a temporary regulation, the IRS defined "ministerial act" as

> a procedural or mechanical act that does not involve the exercise of judgment
> or discretion, and that occurs during the processing of a taxpayer's case after
> all prerequisites to the act, such as conferences and review by supervisors,
> have taken place. A decision concerning the proper application of federal tax
> law (or other federal or state law) is not a ministerial act.[8]

This definition is accompanied by several examples indicating that a ministerial act generally

consists of implementing a decision, not making a decision. According to the examples,

- once an IRS "group manager" approves a taxpayer's request to transfer her
  case to another office, "the transfer of the case is a ministerial act" and
  "interest attributable to a delay in transferring the case" may be abated;

- if an IRS examination reveals a deficiency and the taxpayer and the IRS
  have identified all agreed and disputed issues, a notice of deficiency has
  been prepared and reviewed, and any other prerequisites have been

---

[7]*Horton v. California*, 496 U.S. 128, 143-44 (1990) ("The [Fourth] Amendment protects . . .
by requiring a neutral and detached magistrate to evaluate, before the search or seizure, the
government's showing of probable cause and its particular description of the place to be searched and
the items to be seized.").

[8]Temp. Treas. Reg. § 301.6404-2T, 52 Fed. Reg. 30162-01 (1987) (adopting the definition
of "ministerial act" in a temporary regulation that applies to taxable years after December 31, 1978).

completed, "issuance of the notice of deficiency is a ministerial act" and "interest attributable to a delay in issuing the notice" may be abated;

- if the taxpayer invested in a tax shelter and the IRS's extensive examination of the tax shelter causes delay, the delay is not due to a ministerial act and "interest attributable to this period cannot be abated"; and

- if an IRS agent is sent to a training course and the agent's cases are not reassigned, neither the decision to send the agent to training nor the decision not to reassign the cases is a ministerial act and "interest attributable to the delay cannot be abated."[9]

This temporary regulation has since been replaced by a revised regulation, which only applies to more recent tax years.[10] In 1996 Congress amended 26 U.S.C. §6404(e) to include managerial as well as ministerial acts.[11] The revised regulation was developed after this amendment and did not alter the definition of ministerial act,[12] but added a definition of "managerial act"[13] and examples clarifying that managerial acts include decisions to grant sick leave, send an agent to training, and not to reassign an agent's cases.[14] The examples also

---

[9]*Id.*

[10]26 C.F.R. § 301.6404-2(d) (governing taxable years beginning after July 30, 1996).

[11]*See* Pub. L. No. 104-168, § 301, 110 Stat 1452 (1996).

[12]26 C.F.R. § 301.6404-2(b)(2).

[13]*Id.* § 301.6404-2(b)(1) ("*Managerial act* means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel. A decision concerning the proper application of federal tax law (or other federal or state law) is not a managerial act. Further, a general administrative decision, such as the IRS's decision on how to organize the processing of tax returns or its delay in implementing an improved computer system, is not a managerial act for which interest can be abated under . . . this section.").

[14]*Id.* § 301.6404-2(c).

7

clarify that decisions regarding substantive tax law or the review process itself, such as decisions to

prioritize one case over another or to delay processing a case until a tax shelter has been examined,

are not ministerial acts.[15]

The revised regulation also expressly characterizes the loss of taxpayer records as a

managerial, not a ministerial, act.[16] The earlier, temporary regulation did not indicate how

the loss of records should be characterized.[17] As noted, the revised regulation and its

inclusion of loss of taxpayer records as a managerial act do not apply to the tax years at issue

in this case. Nevertheless, we give considerable deference to the IRS's definition of what

constitutes a ministerial act, particularly when, as here, Congress intended the IRS to adopt

regulations defining a ministerial act,[18] and the revised regulation was adopted pursuant to

notice-and-comment rulemaking procedures.[19]

The IRS's characterization of losing taxpayer records as a "managerial act" finds

support in the legislative history of the 1996 amendments to section 6404(e). The term

"managerial" was added to section 6404(e) in part to permit abatement for loss of taxpayer

---

[15]*Id.*

[16]*Id.* § 301.6404-2(b)(1) (defining "managerial act" to include "the temporary or permanent loss of records").

[17]*See* Temp. Treas. Reg. § 301.6404-2T, 52 Fed. Reg. 30162-01 (1987).

[18]SEN. REP. No. 99-313, 1986-C.B. 1, 209 (1986) ("The IRS may define a ministerial act in regulations.").

[19]63 Fed. Reg. 70012-01 (1998); *see also United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001) (noting that agency interpretations adopted pursuant to notice-and-comment rulemaking procedures are generally afforded a high level of deference under *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984)).

records.[20] Therefore, the IRS's revised regulation does not reflect a change in the definition of "ministerial act"; it reflects the congressional understanding that the loss of records was not ministerial and would not be a basis for abatement before the 1996 amendment. The Bealls' allegation that the IRS returned taxpayer records in disarray is similar to the loss of records and should be treated as a managerial, rather than a ministerial, act.

The Bealls observe that in another case, the IRS conceded that interest should be abated due to the loss of records.[21] Citing the doctrine of judicial estoppel, the Bealls assert that the IRS cannot take a different position in this case. This argument was made for the first time in the Bealls' reply brief on appeal. Therefore, the issue was waived.[22] This court may raise judicial estoppel *sua sponte* in "especially egregious case[s] wherein a party has successfully asserted a directly contrary position."[23] But even assuming the estoppel doctrine applies, this is not an egregious case. The IRS did not affirmatively assert a contrary

[20]*See* H.R. REP. NO. 104-506, at 27 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1143, 1150. ("The bill permits the IRS to abate interest with respect to any unreasonable error or delay resulting from managerial acts as well as ministerial acts. *This would include extensive delays resulting from managerial acts such as: the loss of records by the IRS*, IRS personnel transfers, extended illnesses, extended personnel training, or extended leave." (emphasis added)).

[21]*See Bo v. Commissioner*, 89 T.C.M. (CCH) 1474 (2005) ("Respondent lost petitioners' file from June 26 to November 7, 2001. The Commissioner's loss of a taxpayer's file is a ministerial act. Respondent concedes that interest that accrued during this period should be abated." (citation omitted)).

[22]*See United States ex rel. Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 258 (5th Cir. 1991) ("American cannot raise the doctrine of judicial estoppel on appeal because its failure to plead estoppel means that it waived the issue.").

[23]*Id.*

position; it merely conceded that interest should be abated for the period of the loss.[24] The concession was not necessarily that the loss was a ministerial act; it could have been based on the case's factual circumstances.[25]

## III

The Bealls contend that the district court erred in denying them additional discovery. The discovery they sought related to the question of when the IRS first contacted the Bealls. Even assuming the district court abused its discretion in denying further discovery, an issue we do not decide, the requested discovery does not bear on the question of law that resolves this case, which is whether the IRS's alleged errors and delays were ministerial acts.

\* \* \* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment dismissing this case.

---

[24]*See Bo v. Commissioner*, 89 T.C.M. (CCH) 1474 (2005).

[25]*See id.*